All right, the first case we're going to hear this morning is Porter v. Clarke and Mr. McGuire will hear from you. Good morning, your honors, and may it please the court. Matt McGuire on behalf of the state corrections officials. This case involves a challenge to the conditions of confinement on Virginia's death row that haven't existed for two years and that the Virginia corrections officials have repeatedly and unequivocally testified that they have no intention of reinstating in the future. It is equally undisputed, your honors, that the current conditions of confinement on Virginia's death row satisfy the requirements of the Eighth Amendment. We explained in our brief our view of how the court erred on the merits of this case on the Eighth Amendment question, but we do not believe that the court needs to reach that more difficult constitutional issue in this case. In our view, the narrowest and best way to resolve this case would be to reverse the district court's judgment and to dismiss the case for lack of a remedy. The reason why is that the plaintiffs have not carried their burden of showing that equitable relief is available to them in two different ways. Well, you know, when I look at the case and you've got the prudential mootness argument, you've got the remedy. The Eighth Amendment argument in here seems to me it might be a focus you want to hit on, because while the court did find the subjective prong of it satisfied, I was somewhat concerned, it may just be me, that with regard to the subjective prong, the court essentially said it didn't need to consider the penological justification. And when I read that, it sort of looked like to me that if a person was in isolation, then per se, that could be an Eighth Amendment violation. And I don't think that it should go that far, but that was my feeling. And when I thought you were going to argue this case, I thought you were going to say, Judge, we don't need to get to this remedy because we've got this matter here. And quite frankly, the conditions here, to Virginia's favor, I think you've done a great job in changing the conditions there since these suits started. So the plaintiffs have got to be feeling somewhat good about that, because the conditions of what they were from the beginning and what they are now are very different. But on this particular point, which is the subjective prong of the Eighth Amendment, I'm, I guess, not perplexed, but I thought that that was where you might want to go on this because that's the one that looks like to me could have lasting effect. Otherwise, otherwise, you know, it would be there on the books as a law. Well, Judge, so two responses. I agree with what you're saying about the subjective prong. That is one of the arguments we made in our brief, particularly that we think the record evidence in this case shows that the officials here weren't actually subjectively deliberately indifferent, as this Court understands it, or at a minimum that this is a certain. But the trial court essentially found there is an issue of fact in terms of the penological justification, which means that summary judgment would be precluded. But if I read it correctly, she went on to say, well, I don't have to decide that because there are other alternative ways of doing it. And I don't think that's correct. I think it can be used as a defense that if you have a penological justification in a prison system to put someone in isolation, the state should be allowed to present that justification. But if you read the decision from what I read, and I could be reading it overbroad. I'm looking forward to hearing from the plaintiffs on this. But it looks like to me that part of the decision went a little too far. Judge Wynn, I fully agree with that. And we have asked for a remand in this case no matter what else the Court decides. We think the case should go back for trial. Our other arguments, and in particular the remedies argument, was addressed. But we don't even get to the remedies if we go there. That's right, Judge Wynn. I guess from Virginia's perspective, we have changed the conditions of confinement. If the Court looks at the record evidence, the testimony from the Director of the Department of Corrections, it's been unequivocal that he has no reason to go back. That he wouldn't go back even if there were more death row inmates. That everything has been fine under the current conditions, which we think is a good thing that they went ahead and changed them to make them less restrictive now that they have legitimate penological reasons for doing so. What we need from the Commonwealth's perspective, don't see the need for is a full trial on the issue when the remedies question would avoid trial. So although I agree, Judge Wynn, it is concerning from our perspective that the opinion would remain on the books because this isn't a Muncie-Werribecheter situation. But do you disagree that if you reach that conclusion that a trial court, the law is that you could find an issue of fact on a penological justification presented by the State, but then nonetheless go ahead and say there's an Eighth Amendment violation because there are other alternative means by which you can prove up the subjective problem? That that sounds problematic? It does sound problematic, Judge Wynn. More than problematic. Sounds like to me it's a major issue in the case because for the State, because you realize the next time you come up here and someone's in isolation, that becomes a basis for the Eighth Amendment alone? So, Judge Wynn, I think the way we would think to resolve this from the court's perspective if you were writing an opinion on this issue would be to say the district court's error here wasn't considering the merits at all. So the merits analysis from the district court should essentially be disregarded because the right way to resolve this case to avoid the more difficult constitutional question would be to say, irrespective of whether the prior conditions were constitutional or not, Virginia has changed them and there is no cognizable danger of future recurrence. We don't always like to avoid difficult questions. Sometimes the difficult questions are the interesting parts of the case. Judge Wynn, I would certainly agree with you on that as a general matter. What we're trying to do as a good steward to the court is point out the easier way through from our perspective just because what we think has really happened for the district court and for my friends on the other side on the remedies point, I'll wrap this up for the court, is what this court said in quarter one, the last appeal, was there's a heavy burden on us, the defendants, to prove voluntary cessation under the constitutional mootness standard. And what this court focused on, rightly so, was the refusal from the department officials that they would never go back under any circumstances. And so that wasn't sufficient from constitutional mootness. But the availability of an equitable remedy is a different standard and it's on the plaintiffs to show that there's something more than the mere possibility that this incident will recur. And what the district court's opinion says in this case... Well, the standard is actually an affirmative standard. The Supreme Court has said they have to demonstrate a real threat or probability of resumption. Probability of resumption. Yes, Judge Niemeyer. And so from our perspective, what we have in the record and what the district court did not refute in any way is the undisputed testimony from the department that they have no reason to go back. The deposition transcripts in this case are unequivocal on that point. And the only two things that I understand the district court to have relied on in rejecting sort of the available or equitable remedies argument was, one, that the department won't refuse that it would never go back if some situation developed in the future, notwithstanding the inability of the director to even posit such a situation. And that there would be no immediate way for my friends on the other side to challenge a resumption of the prior conditions of confinement. And we think that people seek emergency relief fairly often from district courts. And so we think that there is an ability for them to come back in and re-raise this challenge on an emergency basis if necessary. But we also think they just failed to show any real threat that it would likely develop in the future, just given the way the evidence has come in in this case. And so because we think that's the easiest way to resolve the case and it would avoid an Eighth Amendment question, that's why I've asked the court to address the equitable remedy. And what would you have tried? Judge King, we would have... You say you want a trial. What would be tried? Two brief responses, Judge King. One, we don't want a trial. We think if the court does reach the Eighth Amendment question, the court could reverse and rule in our favor because the burden is on the plaintiffs here and we think that they have carried the burden. To the extent the court disagrees with me on that, we would want to have a trial on whether objectively the conditions that previously existed did substantially deprive them of a basic human need, and we would want to have a trial on subjectively whether their circumstantial evidence actually shows that the... Why do you have a trial on that? Isn't that a question of law after the facts are established? The facts are all agreed upon. They know exactly what the conditions were, what the rights were, what the powers were in this location and that location. The only question is, does that amount to an Eighth Amendment violation? And that's an argument that the court would make as a matter of law, wouldn't it? I agree that the ultimate issue, Judge Niemeyer, is a question of law. There seems to be in the record to me some discrepancies between the experts about what the exact conditions were. For example, how much human interaction the death row inmates had. Well, the experts were dueling experts, I believe is what Judge Brinkman called them. They went against one another. And, Judge King, in candor, that is exactly the truth. Does that have to be resolved at a trial? We don't think so, Judge King, on the objectivity factor. Would it be a jury trial that you're talking about or a trial of the court? What are you going to have? What kind of trial? I'm at a loss to see what kind of trial you're going to have. Judge King, it would be a bench trial, at least with respect to the experts to have them testify and explain their various reasoning. I mean, part of our complaint with the district court here is that there's a footnote in the opinion pointing out that she found credible one of the experts and not the other, which is improper in summary judgment from our perspective. What we would ask the court to do on the merits of this case is we cited some cases from this circuit that we will admit are fairly dated and to the extent the Eighth Amendment is an evolving standard to decency, you know, that's what we look to. We would point the court to a case that everybody cites out of the Seventh Circuit from 2017, Isbey v. Brown, which looked at a case on conditions of confinement very similar to the ones at issue here and said they don't objectively show an Eighth Amendment violation. They admit that they may have been serious, that they maybe were even more serious than were necessary in some circumstances, but they didn't violate the Eighth Amendment. So we think Isbey shows the court an example of what the standards of decency are currently with respect to prison conditions. Would the conditions in federal prisons be relevant to determining that issue? And the reason I ask this is I looked at the conditions in Florence, Colorado, and in Marion, Illinois, and the restrictions were more severe than what Virginia had in this prior situation. The walls between the cells are soundproof. The lighting is only on the sky. They can't see any trees or mountains. They don't have as many rights of visitation. They have a little radio and they have a little black and white television. They get out to exercise one hour a day where they can take ten steps. And this is Florence. This is our highest security prison, but the question is, is that relevant to determining an Eighth Amendment violation and the standards that we have? I know it sounds pretty tough to me, but. I would think it's relevant to the extent the court is trying to figure out what society requires for the evolving standards of decency around conditions of confinement. We have a footnote in our opening brief pointing out that if the conditions of confinement that previously existed in Virginia were unconstitutional, then it's difficult to see how the conditions at ADX Florence wouldn't also be unconstitutional. Florence is a super max facility. That's for Terry Nichols and terrorists and people. That's not for people like this. Well, Judge Wyden, that's also why I was sort of pointing the court at ISB versus. You don't compare those two things. I was pointing the court towards ISB versus Brown, which is a case that involved administrative segregation, I believe, in Illinois, which is much more like this case. Marion is very similar, too. And the cell in Marion is actually much smaller. It's 56 square feet in isolation, 23 hours a day and that type of thing. But I just raised that as a follow-up a little bit of what Judge King was asking, is what's the trial about? I guess it's aren't we talking about legal principles, but maybe not. I don't know. Judge Niemeyer, it may be. Well, he said he wanted to send it back for a trial. I just don't know what. If you want to send it back for a trial, you ought to be telling us what the trial is going to be about. At minimum, Judge King, it would be on. Whether it's going to be a jury trial or bench trial and all that kind of stuff. So, again, Judge King, just one, we don't think the case needs to go back for a trial. It is our third argument in this case. You all seem to be disagreeing. I don't know whether you're going to resurrect these conditions. No, Your Honor. You're not? Well, you're at odds with Judge Brenkema on that, aren't you? No, Your Honor. If you look at the district court's opinion in this case, she does not ever suggest that the defendants aren't being honest about their. I thought she said you all wouldn't commit. Judge King, what is true in this case is as follows. It's really three things. The defendants believe that the conditions that previously existed are constitutional. The defendants won't commit to never returning to conditions that they believe are constitutional. But she says you wouldn't commit. She's right about that. Not to resurrect the conditions. She's right about that, Judge King. Then you disagree with Judge Brenkema. She says you won't commit. No, we agree. We will not commit to that. She says you won't commit. You said earlier that you didn't intend to commit. That's talking in the presence when you're talking about what the intention is. Well, Judge King, that's my third point. I'm saying something different. She wanted you to say you're not going to do it. Judge King, I think there are two different things going on here, and let me try to pull them apart for you if I can to try to be clear. I'm sorry if I'm not being clear on this. Judge Brenkema, in what this court pointed out in the first quarter decision, where the defendants will not commit to never going back, essentially imposing. Going back to what? That always bothered me. And the fact that you wouldn't commit to making changes is one thing. But going back, it seems to be impossible. You spent $2 million. You changed the exercise area. You put in another room. The idea is why don't you commit? You're never going to go back to that former cage. You're never going to go back to getting rid of that room. I mean, it's a pretty wishy-washy position the state's taking in this case. I think you ought to be much firmer on your positions. Judge Niemeyer, what the department – you can see this in the testimony. I can quote to you from Director Clark. His view on this is there's – But what did Judge Brenkema find? She – I read that to be her finding of your position. Her – and you say your position's one thing, and she says it's something else. It's to me like we're stuck with what she says it is. No, Judge. On this appeal, you can't come up here and say that you take a different position than what she said in her opinion. And if you want the benefit of not going to trial on it, you've already done it, just say we won't do it again. But you want to have – you would now want to challenge it and force it to a situation where the actual ruling could come out and say you are required to do it. I see my time has expired. May I answer, Judge Winters? Yes, please. Our position in this case on this particular issue is unique to the remedies question here, which is the difference between the plaintiff showing their entitlement to equitable relief and our obligation to show constitutional mootness. Judge King, there are two separate things going on here, and I don't think Judge Brinkman disagrees with us in any way. If you'll let me please try to get this out. The first point is the defendants will not commit and have not committed to not going back or reimposing some of these prior conditions if circumstances warrant it. What's the commitment? That's my problem. What's the commitment? Is the commitment not to go back to all the conditions? This is a bundle of conditions. And they said they didn't want to commit. I thought it was not to make any changes. Judge Niemeyer, the defendants here don't want to commit to tying their hands in any meaningful way because they believe the prior conditions were constitutional. What I will point out to the court is that the injunction in this case, as we read it, says we can't reimpose the combination of all the prior conditions. The reason why this injunction matters to the department is because we've been communicated with from the plaintiffs over the summer about changing any number of small things in and around the conditions. Far from reimposing them entirely, any change has generated a potential threat of litigation against the department. That's why this injunction matters to us. Judge King, to wrap up my final point, what our view is that matters here and what Judge Brinkman does not contest in any way, in fact, she says is true. The department officials have unequivocally testified they have no intention of return. I don't. That's what you're saying, they have no intention. And that's in the, intention is a present thing. They can change their intention the next day. She says they won't commit not to go back to the previous way they were doing things. And then you say you need a trial to decide these things. Maybe your appeal is premature. Why didn't you get your trial and make a record complete on this injunction thing before you came up here? Judge King, we would be happy to make a record on this issue, but the point is, in this instance, the burden is on the plaintiffs to show that that statement from the department, the present intention, is false. No, but the judge said your position is different than what you're telling us it is. Judge King, I respectfully disagree, and I think there's a… You think the judge agrees, Judge Brinkman agrees, that your position is what you've said here today? Yes, Judge King, I do. I agree that, I think, what she says your position is is different than what you say it is. Judge King, I will look at her opinion again before rebuttal, but I believe that what I'm saying is fully consistent. Well, on rebuttal, I want you to look at it in light of her making those statements regarding the doctrine of prudential mootness, not necessarily the remedy of it, and then consider also whether this section even talks about ongoing type violations. From the PLRA, Judge Winn? Yes. Happy to do so. Thank you. All right. Ms. Stetson? Good morning, Your Honors, and may it please the Court. I'd like to start by defining the injunction that Judge Brinkman issued, because I think it speaks to a couple of the panel's questions. The injunction that Judge Brinkman issued, which is in effect for two years until February of 2020, is a narrow injunction enjoining the combination, you're correct, Judge Niemeyer, of 23 hours a day alone in their cells, no contact visitation, no congregate recreation or programming, and one hour a day, five days a week of outdoor recreation in separate cages. That is the injunction that issued, and Judge King, you are quite right, that when Mr. McGuire first stood up, I wrote down what he said, because what he said was that the VDOT had repeatedly testified that it had no intention of reinstating those conditions in the future. It's never attested to that, unless you start hair-splitting, I think, about what present intention is versus future intention. Yeah, but I think your burden under the Supreme Court standard seems to be much heavier than this expression of intentions. The Supreme Court says that there has to be evidence of a real threat and a probability, more likely than not, of resumption in order to justify equitable relief. And I didn't see any evidence. It's not just some. I didn't see any evidence of a real threat or a probability of assumption. The best that you argue is that there's a possibility because they won't commit. And, of course, the Court rejected that as the standard for equitable relief, and you can address that. That's my biggest difficulty on the remedy. Certainly, Judge Niemeyer. And I think to begin with, the W.T. Grant case from 1953, the Supreme Court set out the two different standards, one for mootness and one for the Court's authority to issue an injunction. Let's not confuse mootness. We're talking about equitable relief, injunctive relief. So the language in W.T. Grant is a cognizable danger of a future violation. Now, that is the language from the Supreme Court's decision. That's the language that Judge Brigham used. And I think, Judge Niemeyer, it was much more than just saying these defendants haven't committed not to return to these conditions. In fact, I'd point out that the panel previously found just that alone to constitute, quote, more than a mere possibility of a return to the previous conditions. But on top of that, what Judge Brinkema found in her decision was that this litigation prompted these changes. There was talk on the defendants' part about some- No, that's a factual question. Clark said he had them in mind. He came from Nebraska and he had them in mind. He was working on them. So that's- we have to defer to Judge Brinkema's conclusion, but there's pretty clear evidence that there was a slow-moving effort before the litigation even started to change the conditions. I think that's not- And Clark was sort of fighting an uphill battle with the incumbents there in the prison system. But let's ride with what you say. I mean, the fact is they did make a change, but they spent money on the change and they found it for two years. It's been working now three years. And, you know, the PLRA is pretty strict. Congress just did not want this ongoing litigation like this and put some pretty tough standards. Sure. Judge Medemire, let me just make one point with respect to what Judge Brinkema found and didn't find. There is a suggestion in the record, as you point out, that Director Clark had something in mind when he arrived in Virginia. The problem that Judge Brinkema identified is that nothing changed until this litigation. That's the difference. Fair enough. Let's accept that. But that doesn't belittle the point that they made changes. They've been living with them for two years. They don't intend to go back. They don't commit to making any change because if all of a sudden they find in the Congress, for instance, the common area, the recreational area, people are starting to fight, they may have to restrict the common area. Absolutely, Judge Medemire. But that's an emergency exception that's built into this injunction. Fair enough. I didn't mention that. But that's the basis for their failure to commit. But the record indicates they're satisfied with the changes they made and there's no indication that they are threatening to go back or there's a probability, more likely than not, that's your proof that they will go back. Judge Medemire, I have to resist the suggestion that our burden is to show that it is more likely than not. The burden is to show a cognizable danger. That's the Supreme Court's standard. And with respect to the changes that were made. Let me ask you there because you're talking about the Grant case and the term, you just don't mention it. I need to hear the law on this. We're talking about prudential mootness, which is a W.T. Grant case here. What is the standard of review of this court from a determination on prudential mootness? It seems the Tenth Circuit is one of the cases that seems to have gone through it quite a bit. The cases from this court, it's a doctrine that's not even used a lot. It's almost arcane. We've got to go back to my predecessor on the court. Judge Phillips seemed to have written quite a bit on it, other cases here. But what do you say is the standard of review? Because that's critical as to what is the review we give for the review of a decision of a district court judge on this question of prudential mootness. Judge Winn, I agree it's critical. And the standard of review, both of the prudential mootness question and of the injunctive relief issue overall, is abuse of discretion. You're also right, Judge Winn, that the prudential mootness argument Even if she applied the wrong law, that's an abuse of discretion by definition. It's absolutely an abuse of discretion to apply the wrong law, but I don't see these, my brother on the other side, to be arguing that Judge Brinkema applied the wrong law. What he argues in line with this prudential mootness idea is that as an extensive discretion of the Supreme Court, of the district court, the district court shouldn't have granted this injunction. But Judge Niemeyer, back to your point about the changes. Before you go there, I want to make sure we're clear on it. It seems to me that in determining whether Judge Brinkema abused her discretion, we have to determine did she have some basis for saying there's a cognizable danger of this recurrence. And if her basis is that, well, they won't commit, the question we then face is this whole business of will you commit or will you do it again. Is that sufficient for us to be able to say that's an abuse of discretion by the judge? We could disagree with it. We could go one way or the other and say we can argue all day long, but the question is was it an abuse of discretion by this trial judge to say, well, I've asked you, are you going to do this again and you won't commit, so I'm going to say there is a danger, a cognizable danger of recurrence. And from our perspective, as I said, we could disagree all day long. We can go back and forth on it, but is that an abuse of discretion if that's the standard of review? The short answer is no, and the longer answer is on top of that, what I mentioned earlier, the district court didn't just rest on this refusal to commit. What the district court said was there were three reasons why there was a cognizable danger. One of them was that this litigation prompted the changes. Never mind what somebody had been thinking about in his mind before this litigation. This litigation, after the litigation began, that's when the changes were made. That's point one. Point two is the refusal to commit,  Those were the three reasons that the district court gave. But none of those satisfied the affirmative duty. I'm reading here from Oregon State. This is the Supreme Court. It says, where the record discloses no threat or probability of resumption, the plaintiff has failed to carry his burden of establishment or relief. And they talked about the possibility of it, and everything you said points to a possibility, but there is no indication that they intend to go back. No steps have been taken to resume it. There's been no threat of it. And everything you recited are sort of the negatives. You failed to carry on more likely than not. And it's not just the Oregon State medical case. I mean, it's the Grant case, too. And I don't know why that wasn't affirmatively addressed. The district court looked only at the possibilities that exclude the other end. In other words, instead of saying there's affirmative evidence of a threat to go back, to enjoin, or a probability of resumption. Now, probability of resumption is a regular burden of proof in civil cases. Judge Niemeyer, you yourself said that Oregon and W.T. Grant are essentially talking around the same thing. I read the quote from Oregon, yes. But W.T. Grant, when we talk about that characterization in Oregon, it does harken back to that cognizable danger standard. I understand. But now they explain what they mean, cognizable injury. Cognizable injury is where there's a threat, where there's an actual threat of probability and not a possibility. Absolutely, Judge Niemeyer. But as Judge Winn pointed out, we are here on this context on an abuse of discretion review. And what Judge Brinkham has found. We're looking at the standard. We're looking at the actual standard. Yes, and the standard. In other words, if there's an absence of evidence to support a future threat, injunction is just inappropriate as a matter of law. But I have to take issue with that premise, though. I mean, what Judge Brinkham has found. Well, the premise you recited were all the possibilities. They won't renounce that they'll never go back. That's not a threat. That's basically we're not going to commit because we are a penological institution and we don't know what we're going to confront. But there's no commitment that they're going to go back. There's no probability of resumption. As a matter of fact, the probability is just the opposite. They like what they did. They spent a lot of money in doing it. And nobody addresses the affirmative. Where's the evidence? I suppose that may be the judicial question for us. And that is, if a party does something and then either says nothing or when asked directly, are you going to do it again, the question is, is that evidence that there's a cognizable danger it will recur or is it not? And it really is a judicial question. It sort of brings us to the fold of how this particular issue may come down as to how one views that on one side or the other. And if it goes there, the question then comes back to is that abuse of one way while there are others who feel another way. And so it comes down, I think that might be the cut with where this case is because when you read those cases in context, whether it's prudential movement or equitable remedy, the question comes down to, are you going to do it again? And if they stand up and say no, because what you want to avoid is someone goes in and makes a correction, gets themselves out of court, the next day do it again because they said, well, we won't commit. Then you go back and do it again. Even though you might feel, well, you won't ever do it again because you've already made all these $2 million worth of changes, you've done all this stuff, that doesn't tell you anything from a legal perspective. So if the words we won't do it again will satisfy the inquiry, it seems like to me that would make it an absence of evidence. But that's the judicial question, and quite reasonably Judge Niemeyer is right. You could easily go in that direction. But it seems from my perspective there's another direction it could go. And when you go there, we may be in the realm of what is the review of this beyond the standard, whether or not it's the probability standard or whatever. It is a question of the abuse at that point because then you get back and forth on how the trial judge could have gone, which means had the trial judge ruled the other way, we might be stuck there too, one way or the other on it, depending on if that's the view of the evidence. I think that's right, Judge Wynn, and that's why I keep coming back to the standard of review as a starting point. And alongside the standard of review, the actual my starting point was the narrowness of this injunction and the temporal limitation on this injunction. So if anything, all of this talk about whether the defendants would or would not commit to not returning to this combination of conditions except in an emergency, we think that counsels in our favor. I mean, as Judge Niemeyer pointed out, there have been some changes to the physical plant. It wouldn't be much for these defendants to stand up and say, we will not go back to this combination of conditions. You know, if we had a judicial decision situation on it, we're kind of there where we are, and either you're going to go one way or the other. But I want to focus on that Eighth Amendment aspect of it, where I'm not seeing the objective standard has been proven. There's some argument on the side as to whether it is. But even so, on the subjective side, it seems Judge Brinkman made a determination. There is an issue of fact on the penological justification, but I don't need to decide that because there are alternatives to it. That does not seem right to me. Would you respond to that? Certainly. I think the response has a lot to do with what the defendants are doing now because the defendants, of course, have put in place a number of conditions that are very different, as the judges have pointed out, from where we started. So to our minds, one of the reasons that defendants did not argue this on appeal, this legitimate penological justification point, is because while they used to argue back in Prieto days that that former combination of conditions was necessary, they're not arguing that anymore because they changed the conditions. It couldn't have been a legitimate penological justification if they can exist with the conditions that are currently in place. That's why the defendants didn't even argue this in their court of appeals briefs. That's why Mr. McGuire started by saying there's no discussion here about whether the current conditions violate the Eighth Amendment. That's why he focused on the injunction itself. Was it necessary to decide the Eighth Amendment question? Was that gratuitous by the district court? In other words, if the district court had decided to enter an injunction and to hold in place the current conditions, what was the role, what was the service of making a conclusion that prior conditions violated the law? I think the reason for making that conclusion, reaching that conclusion, had to do with the declaratory judgment that the district court also issued. If she had not issued the declaratory judgment and put in place the injunction, the defendants, of course, could return to those conditions or some combination of those. The question to enjoin any change from the current conditions, any material change as she described it in her opinion, to go back and describe conditions that existed several years ago and make a conclusion about those, as Judge Wynn says, that's on the books now and now we have to scrutinize whether there's an Eighth Amendment violation. And that raises some serious difficult questions. It bothers me a lot because we have a lot of penological institutions where conditions like that have been ongoing and it's accepted for high-risk persons. And, of course, there's a record where the people who are on death row were high risk for a lot of different reasons. They were having a lot of difficulties in managing prison conditions. But the question is, can they put somebody in those types of conditions? And that's a complex question that maybe we don't have to resolve. So, Judge Niemeyer, I think if you reach the conclusion that the court could properly issue the injunction without reaching the underlying constitutional question, I agree you don't need to reach that issue as well. I think one of the issues that may be prompting this is that the defendants in their appellate briefs opted to argue the injunctive relief question first and the Eighth Amendment question second. That's not, of course, the way that Judge Brinkema went about it. She actually found that the prior conditions constituted the violation, then turned to injunctive relief as the remedy for that finding. But, Judge Niemeyer, with respect to the comparisons to other institutions, first of all, I think it's difficult, if not dangerous, to look outside the record to try to amass who's doing what. But more to the point, one of the differentiators here... I agree with you. I ask that question genuinely as to whether we can look to other institutions and see what's being done in order to understand the current conditions under the Eighth Amendment. And the Supreme Court has said those are evolving conditions. We don't whip people anymore in that type of thing. Exactly right. And that's why a lot of the cases on which the defendants rely here, both from this circuit and from other circuits, are quite stale at this point, given the evolution of some of the science and the studies behind this. But these present conditions in the federal prisons, for example, are they in the record here? They are indeed, yes. You can find it in the Joint Appendix. You can actually find the listing. So the conditions out there in Colorado and in Marion... Those are in the record, yes. And, in fact, you have an expert in the record, a former director of the South Carolina prison system, saying that these conditions are unconstitutional. So if we're going to look outside, you might look to the expert who submitted testimony in this case. But with respect to... But there are experts that go both ways. I was looking for the real conditions. I just wanted to know how much you all developed it all here. And this is a final order of appeal as opposed to simply an appeal injunction? This is a final order of appeal, yes. The unusual thing about this injunction, though, is what I mentioned earlier, which is that it is... A lot of injunction appeals are interlocutory. Yes, and that's why I was about to say the unusual thing about this injunction. This is a final judgment, but the injunction can only stay in place for two years under the PLRA. The PLRA requires, at the end of two years, a motion to terminate or an automatic termination at that point. That, by the way, Judge Wynn, in answer to your question about the PLRA and the current... It has a death penalty to it. Sorry? It has a death penalty. There's a death penalty to the injunction, two years. It does, if we want to call it that, yes. But I think... Was that funny? Sorry? I just... I shouldn't have said that. I withdraw. I shouldn't have said that. I'm sorry. I shouldn't have gotten into that. One last point, if I could, on the injunction. In addition to the point that this is a temporarily limited injunction, this extends until February of 2020, Judge Wynn, at the end... So it's really the nature of a temporary injunction, rather than a permanent injunction. A permanent injunction is permanent. It is, and I think that speaks to one of Judge Niemeyer's observations about the nature of the PLRA. The PLRA was meant to rein in some rogue district judges who had been issuing very broad, system-wide injunctions for states to change their correction systems. Well, there's federalism concepts underlying it. I mean, the federal court shouldn't get in to try to run the state prison. That's correct. We shouldn't be trying to run anybody's prison. We don't know enough about it. Yes. If I could round off the answer to that question, I see my time is up. But what the PLRA didn't do was to replace the initial underlying standard for granting injunction relief. It imposed a time limitation, and it imposed a scope limitation. It has to be narrow and minimally intrusive. And actually, there's very little debate on that here. These combination of conditions that were enjoined as an emergency. And Judge Brinkman talked about this minimally intrusive aspect. It's not intrusive at all, depending on how you interpret what they say. I think that's right, Judge King. And again, all of these observations in different ways are in service of the question that at least two or three raised. They don't intend to resurrect them. You say that's not enough. Judge Brinkman says they won't commit not to resurrect them. Which aspect of that are we to rely on? How does Judge Brinkman characterize their position or their characterization of their position? Well, I think Judge Brinkman didn't just characterize the position. She quoted their position, both from statements made to this court and to her. If the defendants are going to stand up and say we will not return to these. The question was, I'm interested in that question. The question was the distinction between saying we have no intent of making a change. And the statement says we will not, however, commit to the future. I think it's a little bit more complicated than that. The statements that were made, including to this court, included statements like, I can't stand up here and bind the hands of somebody in the future. That's not just a we don't intend to commit. That's a statement that they're not going to bind their hands in the future. Now, if my brother on the other side stands up and says we will not return to this combination of conditions, absent an emergency, which is what the injunction says, for the two-year period covered by the PLRA, then I think that that's a new commitment made to this court as an officer of the court that this court can rely on. Short of that. If he commits to that today, what you just said, what would that do to this appeal? I think if he commits to that today, it would move the appeal. But short of that. We could accept that here? We wouldn't have to remand it and have Judge Brinkman look at it first? I think it's a representation as an officer of the court to this court. I agree that what the lawyer says we should accept. But I think that given the consistency of the Repeat what you think would satisfy it? Just state it again. We will not revert to the prior combination of conditions, absent an emergency, for the duration of the PLRA period. Would you have to, as a footnote to that, try to define an emergency? I think that the definition of an emergency is something that probably would need to be worked out in practical terms. We wouldn't have another appeal over what an emergency is. I think that's right. But the defendants have come well short of making the commitment that I just said. And Judge Brinkman says that they didn't make that commitment. She called it the most persuasive evidence. She called it evidence. The most persuasive evidence in this record, as recognized by the Fourth Circuit, she's quoting our earlier opinion, I assume, is the significant fact that throughout the course of the litigation, defendants have refused to commit to keep the revised policies in place and not revert to the challenged policies, unquote. That's correct. Fourth Circuit opinion 1314. Is that Judge Botts? No, that was Judge Traxler, I believe. Judge Traxler, that's the 2017 case? Yes. Okay. But that's a good point. But Judge Botts was on that opinion? Who else was on that panel? No, it was your two colleagues. I was not. It was your two colleagues and Judge Traxler, yes. But that's a good place, I think, to end by returning to the point that Judge McGuinn made. Remember, that wasn't the only thing that Judge Brinkman said about why she found that an injunction, narrowly tailored, limited in time, should issue. It was because this litigation prompted the changes. It was because the warden serves at the discretion of the governor. It was that combination of pieces that led her to put this injunction, this narrow, time-limited injunction in place. That's reviewable for an abuse of discretion. There was none. Okay. Thank you. Thank you. Right. Mr. McGuire? Your Honor, I'm going to start with where the court left off about what our position is and what, perhaps, I could represent to the court. I can't bind my client in any way other than what the Director Clark has said on the record in this case. I candidly, I will admit from the court's questions in quarter one versus the court's questions today, the case would be a great deal easier if the Virginia Corrections officials would say that they would not go back to the prior one. I will quote from his deposition what I think is the clearest statement of Director Clark's position. Question, can you think of anything that would make you change your mind and want to reimpose those prior conditions of confinement? Answer, no. That's J.A. 2252. That's the cleanest statement of his position that's in the case, I believe, and we think that sort of encapsulates it. Judge Wynn, on your point about the prudential mootness part of Judge Rankin-Mudd's opinion, I don't want to belabor this because I think you're right. This is sort of the judicial question in the case. Is our failure to commit enough for them to get equitable relief, or do they need some affirmative evidence contrary to what Director Clark is saying? But I saw the sentence you're talking about. I believe Judge Rankin-Mudd points out that she says plaintiffs have shown at least a cognizable danger, and her basis is because defendants, quote, refused to allay this concern about reversion by representing to the court that reversion will not occur. She's right about that. That has been our position all along. I'm happy to check with my client after the argument and file a letter if something changes for the court's benefit. Do you agree with your opposing counsel that if you agreed to the statement that she made, and I'll not try to restate it, you heard it, that if you agreed to it here today, standing there to us, that that would moot this appeal? I'm asking you about the mootness question now. You understand? That if you agreed to it. So we haven't argued mootness on appeal to Judge Rankin-Mudd. No, we haven't argued mootness on appeal. She said if you agreed to this, and Judge Demeyer asked her to restate it, and she restated it. Would you agree with her that that would moot this appeal? She says it would. Judge King, I haven't given it much thought until just now. My instinct is yes, but it would raise a question about what's more in the underlying opinion in this case that I'm not fully prepared to answer for the court at this moment. But we do think, at minimum, for the court to return to one of your earlier questions, Judge King, about what a trial would be about. At minimum, the district court erred in this case by granting summary judgment to the party that bears the burden of proof at trial, particularly with the subjectivity prong for some of the reasons Judge Wind has given, as well as is pointed out in our brief, because this is a circumstantial evidence case. The court has to draw inferences about what the department officials believe, whether they were actually deliberately indifferent, because there's no actual evidence that they were. And our position is you can't draw those inferences against the non-moving party at summary judgment. So at a minimum, the case has to go back for trial on the subjectivity prong of the 8th Amendment claim. Judge Wind, you had asked about the PLRA in our argument about the 36th. Why is that? You know, I think you keep conceding things that you probably don't need to concede. But I don't understand that position. In terms of the subjectivity prong? Yeah, the new trial. Yeah, as well. That isn't the whole question. Well, we don't think a trial is necessary to back all the way up in our brief. Our position is the court should reverse the rule of our case. Well, how come you've got so many contingent positions and you're saying you want trials and you want the subjectivity as a fact question and the 8th Amendment is a legal question? Judge Niemeyer, candidly, there are problems with this case. We felt the district court made a large number of errors and they all lead to various statements. Well, why don't you focus on the errors instead of, okay. But to the point of where you're going with the trial, part of the reason you may be conceding the trial is because the trial judge made a determination there are factual inconsistencies regarding the penological justification of where it says that there's an issue of fact there. And there may even be issue of facts otherwise in terms of determination of whether a penological justification exists or even whether to some extent the center of the injury, the emotional harm and that sort of stuff. There may be factual issues here. So if we get there and determine, well, she should consider penological justification, you've got to, it's not clear cut. You would have to present some evidence on that subjective prong. Judge Winn, that is why we have not pressed very hard on subjectivity prong in terms of ruling in our favor on appeal because it's the plaintiff's burden on both prongs of the Eighth Amendment claim. We have pressed much harder that the court should reverse the rule in our favor because objectively these conditions did not pose or did not deprive them of a basic human need. So Judge Niemeyer, to the extent I'm conceding anything, it's very limited to the subjectivity prong and only to sort of point out to the court that we don't think the court should just affirm across the board in this case. And with the last 10 seconds I have, Judge Winn, I'm happy to address the PLRA point about 3626A. But our basic issue is that you need to have ongoing constitutional violation for some of the reasons my friend on the other side gave, which is to prevent unwarranted federal court interference with state prison systems when there is no constitutional violation ongoing. Unless the court has further questions, thank you very much. Thank you. Could I ask Ms. Stetson, could you come forward again? I'm going to ask you one question. Under the PLRA, is the burden to get an injunction to show an ongoing violation? No. Not to get an initial injunction, Your Honor. The burden is to show a current and ongoing violation when there is a motion to terminate an injunction that's already in place. But that's the language of those two sections, the initial injunction and the termination provision is markedly different than that. Address different components. Okay. In that respect, yes. Thank you. While you're there, it seems to me if you look at the PLRA, I'm sorry, Judge, you opened the door for this. I did before. We're old trial lawyers. If you do look at the PLRA, is there anything in that language? Because we've been talking about this ongoing and current need here as a precondition for relief. I don't read that language as saying one word. If you look at the statute, look at the section itself about current and ongoing. That's exactly right, Judge Wynn. The language about granting the initial injunctive relief, this was the point that I was trying to make earlier about what the PLRA does and doesn't do in this respect. The Act limits the time of the injunction. The Act narrows the scope of the injunction. But with respect to whether an injunction should issue, that doesn't change. That is the same equitable abuse of discretion standard. The current and ongoing language only appears in that termination provision, and we think that that difference in the text is very significant. Yes. Okay. Is that okay? Thank you, Judge. The door is open, you know. Thank you very much. We'll come down to Greek Council and proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, James A. Wynn Jr.